MECHANICS-AMERICAN NATIONAL BANK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8795. Promulgated August 8, 1927.

A debt charged off may not be allowed as a deduction from gross income in the absence of sufficient evidence of determination of worthlessness within the taxable year.

*R. E. Cave, Esq.*, for the petitioner.
*Thomas P. Dudley, Jr., Esq.*, for the respondent.

The Commissioner refused to allow petitioner a deduction of $98,746.14 for alleged worthless debts taken by it in its income-tax return for the year 1919, and determined a deficiency of $6,547.31.

FINDINGS OF FACT.

The petitioner is a national banking association with its principal office in St. Louis, Mo.

The Memphis, Dallas & Gulf R. R. Co. was a corporation operating a small railroad in Arkansas. During the year 1914, petitioner made loans of $50,000, $12,500, and $14,750 to said railroad company, taking notes therefor, which notes were indorsed by W. W. Brown, C. C. Henderson, C. W. Dodson and A. C. Ramsey. Bonds of the railroad company of the par value of $125,000 were delivered to petitioner as security for the amount of its first two loans. The notes were not paid at maturity, and in 1915 renewal notes, payable on demand, were given petitioner. In 1916, petitioner loaned the railroad company an additional amount of $4,274.50, for which a demand note indorsed by the same four individuals, with same collateral, was taken by petitioner. On December 31, 1917, petitioner charged off the notes for $14,750 and $4,274.50, amounting then with accrued interest to $19,772.77. At the beginning of the year 1919, petitioner held as collateral security for the notes given it bonds of the railroad company in the amount of $188,000 par value. Other banks in St. Louis made similar loans to the railroad company.

During and subsequent to 1915 the railroad was operated at a deficit. It was delinquent in the payment of certain taxes and of various judgments and claims of laborers and material men.

In order to prevent a sale of property of the railroad to satisfy such taxes, judgments and liens, several St. Louis banks formed a syndicate to advance funds to pay off such judgments and liens. One, Edward Whitaker, an officer of one of the St. Louis banks, acted as trustee of the syndicate and to him the syndicate banks advanced money, with which he purchased assignments of the various judgments and liens mentioned. These judgments and claims constituted valid liens against the railroad property.

In September, 1915, the petitioner made its first advance to the trustee, Whitaker, in the amount of $15,128. By April 14, 1919, the total of advances by petitioner to the trustee for the purposes mentioned was $41,274.47. Of such amount, the sum of $18,161 was used to pay off or purchase liens for taxes against the property of the railroad. The railroad by court proceedings to which petitioner was a party, as hereinafter mentioned, was placed in the hands of a receiver in 1920. No part of the advances made to the trustee by petitioner had been repaid prior to the receivership. No payments of principal or interest on the bonds held by petitioner as collateral were ever

made. The $188,000 par value of bonds held by petitioner were part of an issue of first and refunding mortgage bonds, of which approximately $1,600,000 was outstanding in 1919. These bonds were subordinate to an issue of underlying bonds, of which $420,000 were still outstanding in 1919.

Under the date of December 31, 1917, the petitioner charged off its books $19,772.77 of the loans to the railroad company for which notes had been taken. The balance of such loans, amounting to $61,751.73, was charged off the books of petitioner under date of July 7, 1919. The total advances to Whitaker, Trustee, amounting to $41,274.47 were also, on the same date, charged off.

In 1920 and prior thereto efforts were made to sell the railroad, but no satisfactory offers were received.

The petitioner, together with other St. Louis banks, in 1920 instituted receivership proceedings in the United States District Court in Arkansas and a receiver was appointed to liquidate the railroad corporation. In 1922, the property of the railroad was sold for $115,000, which sum was less than the amount of the indebtedness incurred by the receiver during his operation of the road.

W. W. Brown and C. C. Henderson, two of the indorsers on the notes held by petitioner, paid $50,000 in compromise settlement of their liability as indorsers on notes held by petitioner and the other St. Louis banks. Said amount was accepted in full satisfaction of their liability, the petitioner receiving its pro rata share of same, $10,748.86.

In 1922, one Conway, who held liens on a portion of the railroad's property, purchased from Whitaker, Trustee, all of the claims he held as such, for the participating banks, for $70,000. The participating banks, including petitioner, received as their share of the $70,000, $49,347.07. The total of the advances by the St. Louis banks to Whitaker, Trustee, for purposes heretofore indicated, aggregated approximately $170,000. Lesser Goldman & Co., who had made similar advances to Whitaker, Trustee, and who held approximately $420,000 of outstanding first mortgage bonds on the railroad, received the remainder of the $70,000. The petitioner received as its share $13,303.97.

OPINION.

LITTLETON: The indebtedness to the petitioner of the Memphis, Dallas & Gulf Railroad Co. consisted of advances aggregating $41,274.47, made through Whitaker, Trustee, and of notes of the rail-

108346°—28——67

road, in the aggregate amount of $81,524.50, indorsed by four individuals and secured by second mortgage bonds of the railroad of the par value of $188,000. The sum of $41,274.47 was advanced for the purchase of various claims which were liens against the railroad property. These claims and judgments were purchased by Whitaker, Trustee, for the benefit of petitioner and others. The tax claims or liens paid or purchased were such as were imposed upon the property of the railroad by the laws of the State of Arkansas. See section 10023, Digest of Statutes of Arkansas, Crawford and Moses, 1921 (Act of March 24, 1911). The advances made to Whitaker, Trustee, which were not used to satisfy claims for taxes, were used for the purchase of various claims of laborers and material men for work done or material furnished in connection with the construction or operation of the railroad, and such under section 8555 of the Digest of the Statutes of Arkansas, Crawford and Moses, 1921, Act of March 31, 1899, are made liens upon the entire property of the railroad, superior, whether prior in point of time or not, to the lien of any mortgage.

The petitioner having purchased such lien claims against the property of the railroad, became entitled, by the principle of subrogation, to the same security and preference which attached to the claims in the first instance. As to such claims, petitioner was preferred to general creditors, and to the holders of the first mortgage bonds. That such were petitioner's rights was recognized and evidenced by the disposition made of the $70,000 realized from the sale made to Conway.

The evidence indicates that some inquiry and investigation was made by petitioner, looking to the collection of its indebtedness against the railroad company, but the evidence fails to show that petitioner's claims against the railroad were ascertained to be worthless in 1919. Such action was not taken prior to 1919 nor in that year, when such indebtedness was charged off petitioner's books. The evidence does not show that conditions in 1919, were such that petitioner could reasonably have anticipated by the end of that year that the sale of the railroad's property, upon which it had superior and preferred liens, would produce nothing to be applied towards payment of the indebtedness due it. After the road went into the hands of a receiver and was sold in 1922, petitioner received about 30 per cent of this portion of its indebtedness. The Board is of the opinion that in 1919 the petitioner was not warranted in charging off

such indebtedness as having been properly ascertained and determined to be worthless.

The remaining portion of indebtedness due petitioner consisted of notes of the railroad company, indorsed by four individuals. The petitioner did not take necessary action in 1919 to force payment by any of the indorsers. Its ascertainment and determination of the worthlessness of the debts was limited to reports received from an Arkansas banker and a credit agency which had been employed to investigate the financial condition of two of the indorsers. The information received was to the effect that two of the indorsers, Brown and Henderson, had within two years made transfers of their property to their wives, yet there is no evidence that any efforts were made by petitioner to ascertain the value of the property so transferred, the conditions under which same were made, nor whether such transfers might not be set aside and recovery had upon the indebtedness due petitioner. That a resort to a creditor's bill in favor of petitioner might have, in 1919, resulted in petitioner making a substantial recovery appears probable, from the fact that in 1920 petitioner realized out of the settlement made by the same indorsers about 12 per cent of the entire indebtedness due upon its notes. The amount so realized also appears to have been raised from property standing in the names of the wives of said indorsers.

The situation existing in 1919 and the facts then known by petitioner, apparently gave no good grounds for the assumption in that year that its notes were worthless—wholly uncollectible, even though they might not be collected in full from the railroad company.

The institution of receivership proceedings subsequently, indicated that petitioner and other banks holding similar claims, expected thereby to realize something on their claims, otherwise such action would not have been taken.

The Revenue Act of 1918, which permits a deduction for debts ascertained to be worthless in their entirety and charged off in the taxable year, does not include debts ascertained to be worthless only in part. *Appeal of Steele Cotton Mill Co.*, 1 B. T. A. 299; *Murchison National Bank*, 1 B. T. A. 617.

The Board finds no error in the action of respondent in disallowing the deduction claimed by petitioner.

Reviewed by the Board.

*Judgment will be entered for the respondent.*